## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

JOHN T. GALLOWAY,                                )
individually, and on behalf of a class,          )
                                                 )
      Plaintiff,                         )
                                                 )    Case No. 4:11-1020-CV-W-DGK
v.                                               )
                                                 )
THE KANSAS CITY LANDSMEN, LLC,                   )
et al.,                                          )
                                                 )
      Defendant.                         )

## ORDER DENYING APPROVAL OF PROPOSED CLASS SETTLEMENT

This case is a putative class action in which Plaintiff John Galloway is suing Defendants, twenty-one Budget brand rental car businesses, for violating the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681. Now before the Court is the parties' "Unopposed Motion for (1) Conditional Class Certification; (2) Appointment of Class Representative; (3) Appointment of Class Counsel; (4) Preliminary Approval of Class Action Settlement and Notice to Class; and (5) Setting of Final Approval Hearing" (Doc. 36). In short, the parties are requesting Court approval of their proposed Stipulation and Settlement Agreement ("the Settlement").

After carefully reviewing the motion and the parties' Suggestions in Support, the Court has no objection to conditional certification of a class for settlement purposes and no objection to appointing Galloway as class representative or Galloway's counsel as class counsel. With respect to the Settlement, the Court finds portions of it are fair and reasonable but has questions about some provisions and strong reservations about others. The Court is particularly concerned that the Settlement will not provide the class members with adequate notice of this lawsuit or

sufficient compensation for their claims.  The Court concludes that the interests of the class members are not better served by the Settlement than by continued litigation, and so declines to grant preliminary approval or set a date for a final approval hearing.

The parties seek approval of all five elements of the motion as a package and so the Court cannot grant the motion in part.  Because the Court declines to approve the Settlement as currently written, the motion is DENIED.

**Standard**

**1.      Standard governing class certification**

Rule 23 governs class certification.  A party seeking class certification must satisfy all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  The decision whether or not to certify a class is not a reflection of the merits of the case.  *Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006).

Under Rule 23(a) class certification is appropriate when "(1) the class is so numerous that joinder of all members is impracticable . . . (2) there are questions of law or fact common to the class . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements are typically summarized as numerosity, commonality, typicality and adequacy.  *In re Constar Int'l Inc. Sec. Litig.,* 585 F.3d 774, 780 (3d Cir. 2009).

Under Rule 23(b), a party seeking class certification must also show that,

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

2

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In addition to these explicit requirements, Rule 23 implicitly requires that a class exist, that the proposed representative be a member of the class, and that the proposed class be "ascertainable or identifiable" and "administratively manageable." *Dumas v. Albers Med., Inc.,* No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *5 n.7 (W.D. Mo. Sept. 7, 2005); *see also In re Paxil Litig.,* 212 F.R.D. 539, 546 (C.D. Calif. 2003) (holding that certification is not appropriate where proposed representatives "have not met their burden of defining proper classes" due to an inability of class members to be determined until late in the litigation).

3

Finally, the party seeking class certification bears the burden of showing that all of the requirements of class certification have been met. *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 246 (W.D. Ark. 2010).

**2.      Standard governing settlement approval**

Under Rule 23(e) a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e).  The court is responsible for determining that the settlement terms are fair, adequate, and reasonable, and the court must also act as a fiduciary "serving as a guardian of the rights of class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).  In determining whether a settlement is fair, adequate, and reasonable, the court must consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id.* "The most important consideration . . . is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* at 933 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)).  Ultimately, the court must determine whether the interests of the class are better served by settlement than by further litigation. *In re Wireless*, 396 F.3d at 932.

**Background**

Congress enacted FACTA as an amendment to the Fair Credit Reporting Act with the goal of decreasing identify theft.  In relevant part, FACTA mandates that, "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the credit card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g).  The purpose of this

truncation requirement is to prevent "dumpster divers" from recovering discarded receipts which contain consumers complete credit or debit card numbers. To encourage compliance, the statute provides for the award of civil damages between $100 and $1,000 for each "willful" violation. 15 U.S.C. § 1681n. The definition of "willful" includes not only knowing violations but acts done with "reckless disregard" of the law. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57-58 (2007). Recklessness entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. A negligent violation is also actionable, but damages for negligent violations are limited to actual damages and attorneys' fees. 15 U.S.C. § 1681o.

The Amended Complaint alleges Defendants *willfully* violated FACTA by failing to truncate credit and debit card numbers and expiration dates on electronically printed receipts. Am. Compl. (Doc. 32) at ¶¶ 60, 65. It specifically alleges Defendants knew of their duty to truncate the expiration date and card numbers; that the FTC specifically alerted businesses about the requirement; that all of the credit card companies explicitly instructed merchants on the law's requirements; and that Defendants received multiple notices regarding the truncation requirement and its importance for preventing identity theft. Am. Compl. at ¶¶ 43-49, 57, 60, 63-65. Galloway has not pled a cause of action for negligence, thus if he cannot prove the Defendants acted willfully, the class cannot prevail.

The parties agree that Defendants are now complying with the law. After the lawsuit was filed, but before any settlement was reached, Defendants installed software at their stores which mask all credit or debit card numbers except the last four digits. The parties agree, at least for settlement purposes, that Defendants electronically printed approximately 1.3 million receipts that did not comply with FACTA for approximately 770,000 individuals. Sugg. In Supp. (Doc.

37) at 5. The parties also agree that there is no litigation currently pending involving similar claims against the Defendants. Sugg. in Supp. at 11.

The parties disagree about the merits of this lawsuit or Plaintiffs' likelihood of success, including whether each class member is a "consumer" under the statute, whether the violations were willful, and whether a statutory damage award of $130 million to $1.3 billion would be constitutional. Sugg. in Supp. at 17. Also relevant to the Court's analysis, Defendants have submitted an affidavit suggesting that a Plaintiffs' verdict on even the low end of the damages spectrum would result in Defendants' "financial destruction." Sugg. in Supp. at 16, Aff. (Doc. 37-4) at ¶¶ 13-14.

<strong>Summary of the Proposed Settlement</strong>

**1. Class definition**

The parties propose defining the settlement class as,

> All individuals who, on or after December 4, 2006 and on or before October 7, 2011, used any debit or credit card at any of Budget's rental locations where Budget provided or facilitated the provision of an electronically printed receipt at the point of sale or transaction that contained the credit or debit card's expiration date and/or more than the last four digits of the credit or debit card number.

Settlement (Doc. 37-5) at ¶ 1(h). Exactly which Budget rental locations are covered by the Settlement is somewhat unclear. Neither the Settlement nor the proposed notice identifies the locations, but the parties have attached a list of covered locations as an exhibit to the Settlement. Ex. 1 to App. I.

6

**2.      Benefits provided by the Settlement**

The proposed Settlement is a "claims made" settlement.  With the exception of the named plaintiff, who will receive a $3,000 cash payment, the Settlement provides relief only to eligible class members who fill out paperwork and submit a valid claim.

Each class member who submits a valid claim will receive a coupon (also called a "certificate" in the Settlement) redeemable for $5.00 off any car rental or $25.00 off of any car rental exceeding $150.00, excluding taxes and fees.  Class members receive one coupon for each violation, up to a maximum of four.  There is no cap on the total number of coupons Defendants will provide to the class.  A coupon is transferrable but comes with a number of restrictions on its use.  It cannot be used in conjunction with any other gift certificate, voucher, coupon, or price discount; it is not redeemable for cash; it must be used within 120 days from the date it is issued; and only one coupon can be used per rental.  The long-form notice states, "[t]here are additional restrictions as well."  Settlement Ex. D.  The coupons themselves list restrictions which are not set forth in the settlement agreement.  A sample coupon states it "may not be available during holiday and other blackout periods.  Blackout dates include New Year's Day, Martin Luther King, Jr. Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day.  Call specific location for details."  Settlement Ex. A.

Under the Settlement, Defendants will pay all administrative costs of the settlement, estimated to be $45,000, as well as Plaintiffs' counsel's attorneys' fees, expenses and costs up to $175,000.[1]  Defendants also agree to the entry of a court order requiring them to comply with FACTA at all of their rental locations.

---

[1] Defendants have also agreed not to contest the reasonableness of Plaintiffs' attorneys' fees, expenses, and costs up to $175,000.

### 3.     Class notification

The parties propose that the class members be notified of the lawsuit and settlement by newspaper publication, a posting at the covered rental locations, and a website. The Settlement does not provide for direct notification. The Settlement provides that "the Court may order additional notice as well, and Budget will comply with such order." But if any change is a material change, Budget may terminate the agreement. Settlement ¶¶ 1(m), 10(c)(ii)-(iii), 14.

The newspaper notification consists of a short notice, set out in exhibit C, published in the following seven regional newspapers: The Atlanta Journal-Constitution, Birmingham News, The Kansas City Star, The Commercial Appeal, Omaha World Herald, The Salt Lake Tribune, and The Wichita Eagle. Settlement at ¶ 10(c)(ii). The notice will be published once on a weekday. Defendants will also post a short notice at each of their rental locations "in a conspicuous place." What constitutes a "conspicuous place" is undefined. A comprehensive notice, set out in exhibit D, will be posted on a website created by the claims administrator.

The notice does not clearly indicate who is an eligible class member. The publication class notice states that "Whether you are a class member will depend, in part, on the Budget location where you made your purchase. For a list of eligible locations, log onto [the class web site]." It appears the parties have attached a list of covered locations as an exhibit (Doc. 37-5 at 77). The long form notice does not include any such language (Doc. 37-5 at 55).

### 4.     The claims process

Defendants will provide a coupon to every class member who "shows that he or she made a credit/debit card transaction at one of Defendants' retail locations during the Class Period" (Doc. 37 at 14.) It is unclear what proof class members will have to submit to prove they have a valid claim. The proposed publication class notice states, "Class members will be required to

attest to the accuracy of the information set forth in any submitted claim form and may require further information before the award of a Certificate."  Settlement Ex. C.

**5.    Opt out provision**

To opt out of the settlement and avoid being bound by the settlement, a class member must submit an exclusion form provided on the website to both Plaintiffs' counsel and Defense counsel.  The opt-out form requests minimal information, but it must be both emailed *and* either sent by first class mail or hand-delivered.  The settlement does not contain any provision that allows Defendants to withdraw from the settlement if a certain number of class members decide to opt out.  Settlement ¶¶ 1(m), 21.

**Discussion**

At the outset, the Court commends the parties for their efforts to reach an amicable resolution to this dispute so early in the litigation.  The Court has no concerns about much of what the parties propose:   The Court has no objection to appointing Galloway as class representative or Plaintiff's counsel as class counsel; the Court agrees that class certification for settlement purposes is appropriate under Federal Rule of Civil Procedure 23(a) and 23(b)(3); and the Court finds the implicit requirements for class certification are met.   The Court's only quibble with respect to class certification is that the class definition clearly delineate which Budget rental locations are covered by the Settlement.

The Court, however, has significant reservations about other provisions which preclude granting approval.  The Court is concerned that portions of the Settlement are unclear, that the opt-out procedure is unnecessarily onerous, that the notice is insufficient, and, most importantly, that the compensation provided to the class is inadequate.  The Court discuss each concern below.

**1.     Unclear Settlement provisions**

The Court would like the parties to clarify: (1) which Budget rental locations are covered by the Settlement (and thus who is an eligible class member); (2) what are the "additional restrictions" and the precise "blackout" dates on the coupons use; and (3) what materials class members will have to provide to prove they have a valid claim. The parties can easily amend the Settlement and notice forms to answer these questions.

**2.     Notice**

The Court is not convinced that the notice provided to the class members is the "best notice practicable under the circumstances." First, it is unclear whether the parties have considered whether the preferred mode notice, direct notice, is possible or feasible here. Since the parties can determine that there were approximately 1.3 million transactions affecting 770,000 customers, it may be possible to notify each class member individually by sending notice directly to the address of record for each credit or debit card. If direct notice is not possible or feasible, the Court would like the parties to explain their reasoning on the record.

With respect to the notice suggested by the parties, the Court finds notice in each retail location and on the internet is reasonable, but publishing the notice once in a newspaper on a weekday is not. It appears to the Court that publishing the notice on both weekdays and weekends, perhaps multiple times, would provide more notice to the class without being cost-prohibitive.

The Court is concerned that the notice be improved so that a large number of class members will participate in the settlement. The Court cautions it will not give final approval to any settlement unless a significant percentage of the class members benefit.

**3.     Opt-out procedure**

To opt out of the settlement and avoid being bound by the settlement, a class member must submit an exclusion form to both Plaintiffs' counsel and Defense counsel, and the form must be both emailed *and* either mailed first-class or hand-delivered. This procedure seems unnecessarily onerous.

**4.     Class members' compensation**

Finally, the Court is concerned that the Settlement offers insufficient value for the class members' claims. Although every class member could receive a coupon, it is a coupon which is generally available to any frugal shopper,[2] a fact which weighs against approving the Settlement. The coupons have no cash value, and while transferable, they cannot reasonably be expected to be sold in a secondary market, because no one will buy a coupon if an equivalent is available for free on the internet. Even used as coupons the coupons have little value because they contain many restrictions on their use. *Id.* For example, the coupons are only good for 120 days from issuance, cannot be combined with any other offers, and may not be used during any holiday or other black-out period, the times when many consumers are most likely to rent a car.

Furthermore, few class members will likely file claims because the benefit of doing so is not worth the effort. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). The Settlement requires each claimant to provide information proving "that he or she made a credit/debit card transaction at one of Defendants' retail locations during the Class Period." Sugg. in Support at 14, 21. Each claimant will also have to attest to the accuracy of this information and may be required to submit additional information. Few class members are likely to rummage through their records to find old credit-card receipts (assuming they still have them), swear to the viability of their claim, and agree to submit additional information just to receive a

---

[2] A quick search of the internet found comparable coupons for a Budget brand rental car.

run-of-the-mill coupon with a number of restrictions on its use. Obviously, this also weighs against the settlement.

Likewise, the provision whereby Defendants agree to obey the law in the future provides no marginal value to the class members, because Defendants are already in compliance. After the lawsuit was filed, Defendants invested in software to comply with FACTA's truncation requirement. Since they now own the software, there is no reason for Defendants to stop complying. Indeed, if they did stop complying, a new lawsuit could be filed and the plaintiff could easily prove a willful violation.

Of course, the reasonableness, fairness, and adequacy of the Settlement ultimately depends on the strength of the class members' claims and the opposing defenses. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D 197, 212 (D. Me 2003). After carefully reviewing this case, the Court sees nothing that suggests the class has a weak case and should settle for very little. There are no unusual barriers to certification or novel legal questions that might unexpectedly derail Plaintiffs' case. Although Plaintiffs will have to prove willfulness, this should not come as a surprise to Plaintiffs' counsel because it is an element of the cause of action here, and counsel "performed extensive research and investigation as part of the filing and litigating of Plaintiff's claims." Sugg. in Supp. at 13. Presumably Plaintiffs' counsel would not have filed this case unless they believed that had a reasonable chance of prevailing, and given the assertions made about Defendants willfulness in the Amended Complaint, it appears that the class has at least a fighting chance of prevailing. Consequently, there is no need to conduct a fire sale of the class members' claims.

Of course, the Settlement does give the class members something right now—a coupon— and avoids the risks inherent with continued litigation. But the value of the Settlement is

12

dwarfed by the potential upside of continuing the litigation. From the class members'
perspective, the worst thing that can happen by proceeding to judgment on the merits is that they
will not receive a few coupons they can get simply by searching the internet. On the other hand,
the potential upside of continuing the litigation is quite high. If the class prevails, each member
would be entitled to least $100 in cash per violation. Granted, the parties have intimated that
Defendants might not be able to pay such a judgment, but this claim is little more than a bare
assertion. And even if Defendants are unable to pay a judgment of $100 per claim, nothing in
the record suggests they cannot afford to settle these claims for something less. Consequently,
the interests of the class members are better served by continued litigation.

Any settlement should provide the class with reasonable value for their claims. As
currently written, however, the Settlement does not, and so the Court cannot approve it.

**Conclusion**

The parties' motion (Doc. 36) is DENIED. The Court encourages the parties to confer on
an alternate settlement agreement that addresses the Court's concerns. Should the parties reach a
new proposed agreement, the Court will promptly consider it. In the meantime, the parties
should proceed with discovery. If a revised scheduling order is needed, the parties should submit
a joint proposed revised scheduling order to the Court on or before November 1, 2012.

**IT IS SO ORDERED.**

Date:  October 12, 2012         /s/ Greg Kays
                                GREG KAYS, JUDGE
                                UNITED STATES DISTRICT COURT

13