THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOHN T. GALLOWAY, <br> Individually and on behalf of a class, <br><br> Plaintiff, <br><br> v. <br><br> THE KANSAS CITY LANDSMEN L.L.C. d/b/a BUDGET RENT A CAR et al. <br><br> Defendants. | Case No. 4:11-cv-01020-DGK |

**JOINT RESPONSE TO AMENDED ORDER REQUESTING ADDITIONAL INFORMATION ON PROPOSED AMENDED CLASS ACTION SETTLEMENT**

The Plaintiff John T. Galloway and all of the Defendants jointly submit this Joint Responses to Court's Amended Order Requesting Additional Information on Proposed Amended Class Action Settlement.

_____

Court's Question Number 1: In footnote six to Defendant's motion (Doc. 46), it suggests, but does not unequivocally state, that direct-mail notice will be sent to 770,000 class members. Do the parties agree that this is the estimated number of class members?

Parties' Joint Response: Yes, and in fact, the Parties can specifically report that the number of class members will be 772,994.

_____

Court's Question Number 2: Is this number, 770,000 the same number of direct mail notice/coupons the parties expect to mail? If so, how was this determined?

Parties' Joint Response: As to the first question, the Defendants will mail 726,262, which is the number of unique customers for which the Defendants have valid addresses. As to the second question, please see bullets directly below.

**JOINT RESPONSE TO AMENDED
ORDER REQUESTING ADDITIONAL INFORMATION** Page 1

- The Defendants determined from a review of their records that between December 4, 2006 and October 7, 2011, the total number of credit card transactions performed was 1,184,357.

- The Defendants determined that those 1,184,357 credit-card transactions were performed by 772,994 unique customers (*i.e.*, 621,164 of those customers performed a single transaction ("Single Transaction Class Members"), while 151,810 of those customers performed multiple transactions ("Multiple Transaction Class Members")).

- As described further in the answer to question three, of the 772,994 unique customers, the Defendants have valid addresses for as many as 726,262 of them.

- The proposed Settlement Agreement would require the Defendants to mail out 726,262 Certificates, each of which would have a bar code.

- When a holder of a Certificate would bring a Certificate to one of Defendants' retail locations, the bar code would be scanned, and the information revealed by the scanning would identify whether—depending on whether the Certificate was originally sent to one of the Single Transaction Class Members or one of the Multiple Transaction Class Members—the Certificate can be for multiple discounts (*i.e.*, equivalent to the number of transactions each performed).

_____

| | |
|---|---|
| Court's Question Number 3: | How many notices/coupons do the parties estimate will be returned as undeliverable or will otherwise not reach the intended recipient for whatever reason. |
| Parties' Joint Response: | 47,350 – 56,731 (between 6.1 and 7.3 percent). |

- The Defendants engaged Val Bergman at Tri-Win, Digital Print & Mail Services to coordinate the printing and mailing of the Certificates (the "Direct Mail Expert").

- The Direct Mail Expert ran the list through specialized software and concluded that of the 772,994 customers comprising the class, between 47,350 (6.1% of the class) and 56,731 (7.3% of the class) would not be delivered by the postal service due to invalid or missing information (*e.g.*, customers did not provide accurate information).

- Stated another way, of the 772,994 customers comprising the class, between 716,262 (92.7% of the class) and 725,643 (93.8% of the class) would be delivered the Certificate.

- While some class members may not receive notice of the settlement and their Certificate, under Rule 23(c)(2)(B), the class is entitled to "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). The Settlement Agreement provides for the best notice practicable by sending direct mail notice with class compensation to all class members that can be identified through reasonable effort. Direct mail notice (and here class compensation) has been approved and upheld as the best method of notice by the Eighth Circuit Court of Appeals despite the fact that some class members would not be reached due to a change of address. *See Grunin v. International House of Pancakes,* 513 F.2d 114, 121-22 (8th Cir. 1975). In *Grunin*, the court held that direct mail notice to class members' last known addresses was the best practicable even where one-third of the class did not actually receive the mailed notice. *Id.* In this case, a much smaller percentage of the class will not be notified of the settlement. Additionally, since notice is being sent simultaneously with class compensation, the vast majority of class members will receive both notice and compensation. Accordingly, this Court should approve the parties' notice plan and method of Certificate distribution in this case.

| | |
|---|---|
| Court's Question Number 4: | What percentage of the coupons mailed do the parties estimate will be redeemed? |
| Parties' Joint Response: | The parties do not have an estimate. |

- The Defendants have never previously issued equivalent Certificates, *i.e.*, Certificates (a) directly mailed to prior customers (b) containing no Black-Out Dates, and (c) able to be stacked onto other discounts.

- Based on the Defendants' industry knowledge, however, the Defendants believe that redemption rates for discount programs increase depending (a) on the recipients of the discounts (*i.e.*, the more prior customers are part of the group—including multiple-transaction customers—the better the redemption rates), (b) the restrictions on the discounts (*i.e.*, the fewer the restrictions on the discounts, the better the redemption rates), and (c) the ability to use multiple discounts (the more availability for stacking multiple discounts, the better the redemption rates).

- In this case, the Defendants will—by definition—be sending the Certificates to only prior customers (including over 150,000 customers who previously performed multiple transactions); there are no restrictions on the discounts (*i.e.*, no Blackout Dates); and the Certificates may be stacked onto other discounts. Thus, all three variables weigh heavily towards increased redemption rates.

- Accordingly, the parties are optimistic that many class members will choose to redeem their Certificates. In any event, when the settlement is otherwise fair, adequate and reasonable, courts have held that even low redemption rates should not result in disapproval of a class action settlement. *See, e.g., Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. 2012) (citing *White v. Experian Info. Solutions, Inc.*, 803 F.Supp.2d 1086, 1100 (C.D. Cal. 2011) ("[T]his underwhelming [5%] response rate does not mean that the Settlement, on the

**JOINT RESPONSE TO AMENDED**
**ORDER REQUESTING ADDITIONAL INFORMATION** Page 4

whole, is not fair, reasonable and adequate."); *Touhey v. United States*, 2011 WL 3179036, *21-22 (C.D. Cal. 2011); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding favorable class reactions in a 6.9% response rate—1800 proofs of claim out of 26,000 notices sent—and a 9% response rate—37,000 proofs of claim out of over 400,000 notices sent); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 (D. Me. April 13, 2011) (finding favorable class reaction in a 3.9% response rate—438,169 claims out of 11.3 million eligible claimants); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 397, 406 (D. Mass. 2008) (approving entire amount of attorneys' fees request after previously approving settlement with response rate of slightly more than 3%); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F.Supp.2d 320, 321 (D. Me. 2005) (noting prior approval of settlement that yielded 2% claim rate); *Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167, 169, 172 (W.D. La. 1997) (noting prior approval of settlement that yielded 4.3% claim rate); *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083 (N.D. Cal. Jan. 18, 2008) (noting previous approval of settlement with less than 1% claim rate).

_____

Respectfully submitted,

*/s/ Brian J. Christensen*_____
Brian J. Christensen  MO # 53497
Bryant T. Lamer         MO # 57355
Lindsay Todd Perkins MO # 60004
Spencer Fane Britt & Browne LLP
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Fax: (816) 474-3216
E-mail: bchristensen@spencerfane.com
E-mail: blamer@spencerfane.com
E-mail: ltoddperkins@spencerfane.com

*Attorneys for Plaintiff*


*/s/ Ryan Fowler*_____
Scott K. Logan, Mo# 40381
Thomas R. Pickert #58262
Ryan C. Fowler, Mo# 56918
LOGAN LOGAN & WATSON, L.L.C.
8340 Mission Road, Suite 106
Prairie Village, KS 66206
(913) 381-1121
FAX (913) 381-6546
E-mail: rfowler@loganlaw.com

Ronald M. Gaswirth, TX# 07752000
(admitted *pro hac vice*)
Barry M. Golden, TX# 24002149
(admitted *pro hac vice*)
GARDERE WYNNE SEWELL LLP
1601 Elm St., Suite 3000
Dallas, Texas 75214
(214) 999-4746
FAX (214) 999-3746
E-mail: bgolden@gardere.com
E-mail: rkingrey@gardere.com

*Attorneys for Defendants*