# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| JOHN T. GALLOWAY, individually, and on behalf of a class, ) ) ) | |
| Plaintiff, ) ) | Case No. 4:11-1020-CV-W-DGK |
| v. ) ) | |
| THE KANSAS CITY LANDSMEN, LLC, et al., ) ) ) | |
| Defendant. ) | |

## ORDER SETTING HEARING ON PROPOSED CLASS SETTLEMENT

This case is a putative class action in which Plaintiff John Galloway is suing Defendants, twenty-one Budget brand rental car businesses, for violating the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681. Now before the Court is the parties' "Supplemental and Amended Unopposed Motion for (1) Conditional Class Certification; (2) Appointment of Class Representative; (3) Appointment of Class Counsel; (4) Preliminary Approval of Class Action Settlement and Notice to Class; and (5) Setting of Final Approval Hearing" (Doc. 46) and suggestions in support (Docs. 45, 47).

This is the second proposed settlement submitted for the Court's review and approval. The first proposed settlement was a "claims made" settlement in which class members had to apply to receive a low-value coupon with numerous restrictions on its use. The Court denied approval because the Court was concerned the settlement was unclear, did not provide the best notice practicable, contained an unnecessarily onerous opt-out procedure, and offered insufficient value for the class members' claims. *Galloway v. Kansas City Landsmen*, LLC, No. 4:11-cv-1020-DGK, 2012 WL 4862833, at *5-7 (W.D. Mo. Oct. 12, 2012).

The revised proposed settlement ("the Amended Settlement") addresses most of these concerns. However, the existing record does not demonstrate that the Amended Settlement offers sufficient value for the class members' claims and therefore is fair, reasonable, and adequate. The Court herby orders a hearing on the Amended Settlement. During this hearing, the parties should place on the record evidence which provides a valuation of the class members' claims and a monetary value for the Amended Settlement so the Court can determine whether the proposed coupon settlement is reasonable.

## Standard

In its previous order, the Court outlined the procedure for certifying a class for settlement purposes under Federal Rule of Civil Procedure 23. *Id.* at 1-2, 5. The Court's only reservation with respect to class certification was that the class definition specify the Budget rental locations covered by the settlement. *Id.* at 5. As discussed below, the Amended Settlement clarifies this. Accordingly, certification of a class for settlement purposes is appropriate under Federal Rule of Civil Procedure 23.

The remaining question is whether the Court should approve the Amended Settlement. Under Rule 23(e) a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e). In making this review, the Court is mindful that public policy favors settlements and that in reviewing a proposed class action settlement a court must not substitute "its own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999). Review of a proposed class action settlement still "must be exacting and thorough" because the adversarial nature of such litigation is often lost once the named plaintiff and the defendants decide to settle and "the settling parties frequently make a joint presentation of the benefits of the settlement without significant information about any drawbacks." Annotated Manual

for Complex Litigation (Fourth) § 21.61 (2008). "If objectors do not emerge, there may be no lawyers or litigants criticizing the settlement or seeking to expose flaws or abuses." *Id.*

The court is responsible for determining that the settlement terms are fair, adequate, and reasonable, and the court must also act as a fiduciary "serving as a guardian of the rights of class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). In determining whether a settlement is fair, adequate, and reasonable, the court must consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id.* "The most important consideration . . . is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* at 933 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d at 1150). Ultimately, the court must determine whether the interests of the class are better served by settlement than by further litigation. *In re Wireless*, 396 F.3d at 932.

Where, as here, the parties seek to settle before a class has been certified, a court must exercise particular vigilance in reviewing a pre-certification settlement. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) (Posner, J.) (noting judges should "exercise the highest degree of vigilance in scrutinizing proposed settlements" to ensure there is no collusion); *In re G.M. Corp. Pick-up Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3rd Cir. 1995) (affirming the need for courts to be more scrupulous than usual in approving pre-certification settlements because of the risk of collusion between the parties which may harm the absent class members' interests).

Finally, the Class Action Fairness Act of 2005 ("CAFA") requires more "heightened judicial scrutiny of coupon-based settlements" than settlements resulting in cash payments. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *see also*

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (holding CAFA imposes a greater level of scrutiny to coupon settlements). CAFA mandates that "[i]n a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). Rule 23(e)(2) and 28 U.S.C. § 1712(e) require the court to determine whether the value of the "coupon settlement is reasonable in relation to the value of the claims surrendered." *Sobel v. Hertz Corp.*, No. 3:06-CV-0545-LRH-RAM, 2011 WL 2559565, at *10 (D. Nev. June 27, 2011). The settlement's proponents bear the burden of developing the record and proving that the settlement is fair, reasonable, and adequate. *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350-51 (3d Cir. 2010).

**Background**

Congress enacted FACTA as an amendment to the Fair Credit Reporting Act with the goal of decreasing identity theft. In relevant part, FACTA mandates that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the credit card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g). The purpose of this truncation requirement is to prevent "dumpster divers" from recovering discarded receipts which contain consumers complete credit or debit card numbers. To encourage compliance, the statute provides for the award of civil damages between $100 and $1,000 for each "willful" violation. 15 U.S.C. § 1681n. The definition of "willful" includes knowing violations and acts done with "reckless disregard" of the law. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57-58 (2007). Recklessness entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. A negligent violation is

4

also actionable, but damages for negligent violations are limited to actual damages and attorneys' fees.  15 U.S.C. § 1681o.

The Amended Complaint alleges Defendants willfully violated FACTA by failing to truncate credit and debit card numbers and expiration dates on electronically printed receipts.  It specifically alleges Defendants knew of their duty to truncate the expiration date and card numbers; that the FTC specifically alerted businesses about the requirement; that all of the credit card companies explicitly instructed merchants on the law's requirements; and that Defendants received multiple notices regarding the truncation requirement and its importance for preventing identity theft.  Galloway has not pled a cause of action for negligence, thus if he cannot prove the Defendants acted willfully, the class cannot prevail.

The parties agree that Defendants are now complying with the law.  After Plaintiff filed this lawsuit, Defendants installed software at their stores which mask all credit or debit card numbers except the last four digits.  The parties agree, at least for settlement purposes, that Defendants electronically printed approximately 1.3 million receipts that did not comply with FACTA for approximately 770,000 individuals.  The parties also agree that there is no litigation currently pending involving similar claims against the Defendants.

Finally, while the parties disagree about the merits of this lawsuit or Plaintiffs' likelihood of success, they agree it is doubtful that Defendants could pay a verdict exceeding $130 million.

**Summary of the Amended Settlement**

The Amended Settlement is similar to the proposed settlement outlined in the Court's previous Order, *Galloway*, 2012 WL 4862833, at *4, but differs in the following ways.

**1.      Class Definition**

The class definition is unchanged with the exception that it identifies which Budget locations are covered by the Settlement.

**2.      Benefits Provided**

The parties have altered the Settlement from a "claims made" settlement to a "direct notification and payment" settlement. Instead of having to submit a claim form to receive a coupon, each class member will be mailed a post-card with a bar code on it. The post-card notifies the class member of the settlement and also serves as a coupon. When the post-card is presented at one of covered locations and the bar code is scanned, the presenter is entitled to $10 off any rental less than $150 or $30 off any rental exceeding $150 exclusive of tax and fees.

This coupon can be used in conjunction with any other offer and is good for 180 days from the time of issuance. The coupon can be used at any time; there are no black-out dates. Each class member will receive only one coupon regardless of how many credit card transactions that class member made.

As before, Defendants will: (1) pay all administrative costs of the settlement; (2) pay attorneys' fees,[1] expenses, and costs up to $175,000; and (3) consent to a court order requiring them to comply with FACTA at all of their rental locations.

---

[1] As in the first proposed settlement, the Amended Settlement's attorneys' fees provision contains a "clear sailing" agreement. In a clear sailing agreement, "the defendant agrees not to contest the amount awarded by the court presiding over the settlement as long as the award falls beneath a negotiated ceiling." William D. Henderson, Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77 TUL. L. REV. 813, 814 (2003). While such provisions are common in class action settlements, courts should apply heightened scrutiny to them because such provisions by their nature deprive the court of the benefits of the adversary process. *Stokes v. Saga Intern. Holidays, Ltd.*, 376 F. Supp. 2d 86, 89 (D. Mass. 2005); *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) (discussing the risk that plaintiffs' attorneys and defendants "will team up to further parochial interests at the expense of the class"). In the present case, the Court has carefully reviewed the Amended Settlement and finds no indicia of collusion with respect to Plaintiff's counsel's request for attorneys' fees. The Court notes there is also less incentive for collusion here since 28 U.S.C. § 1712(a)-(b) limits the fees Plaintiff's counsel may seek.

**3.     Class Notification**

Under the Settlement, class notification will be by direct notice in the form of a post-card mailing sent to approximately 675,000 class members.[2]

**4.     Opt-out Provision**

The parties have simplified the opt-out provision so that in order to opt-out, class members need only send a single email to defense counsel.

## Discussion

At the outset, the Court acknowledges the parties' efforts to reach a negotiated resolution to this dispute. The Court appreciates the parties clarifying the class definition so that class members will know which locations are covered by the Settlement and streamlining the opt-out procedure so that no class member will be discouraged from opting-out by an onerous procedure. The Court also welcomes the modification to the class notification/claim process so that class members will not have to apply to receive a coupon. This change, along with elimination of the restrictions on redemption, should substantially increase the class participation rate.

The Court, however, remains concerned that the Amended Settlement offers insufficient value for the class members' claims. Specifically, the Court cannot determine from the existing record (1) an approximate value for the class members' claims, and (2) the approximate value of the Amended Settlement. Without this information, the Court has no rational, independent basis for deciding whether the Amended Settlement is fair, reasonable, and adequate.

---

[2] Defendants report they have identified 772,994 customers who would be class members and that they have valid addresses for "as many as 726,262 of them." The parties anticipate that between 47,350 and 56,731 of the mailings sent (between 6.1 and 7.3 percent) will be returned as undeliverable. By the Court's calculation, this means between 678,912 and 669,531 class members will receive notification and a coupon. For reasons which are unclear to the Court, the parties indicate that between 716,262 and 725,643 class members will receive a notice/coupon postcard. During the hearing, the parties should clarify these figures.

### A. The Court cannot determine from the existing record an approximate value for the class members' claims.

The first step in determining whether a settlement is fair is analyzing the strength of the plaintiff's case to establish the value of the class members' claims. Although the district court cannot value the claims with a high degree of precision, the court should "insist that the parties present evidence" that would at least enable it to make a "ballpark valuation" before deciding whether to approve a settlement. *Synfuel Technologies, Inc.*, 463 F.3d at 653 (quoting *Reynolds*, 288 F.3d at 285).

Neither party has provided a monetary value for the class claims. While the parties disagree about the strength of these claims, they appear to agree that the class claims are sufficiently weak that the Court should approve the settlement without regard to the class' chances of obtaining a recovery or potential ranges of recovery.

Defendants' evaluation of the class members' claims is unambiguous: they contend that the class members' claims are so weak that continued litigation is futile. Defendants devote twenty-three pages of their brief to arguing that a contested class is uncertifiable; a class cannot prevail on these FACTA claims at trial because they cannot prove willfullness; an appellate court would overturn any jury verdict based on a lack of due process; and even the statutory minimum award of damages would cause the Defendants to seek bankruptcy protection and leave the class with no recovery (Doc. 45 at 10-32).

On the other hand, Plaintiff believes, perhaps paradoxically, that the class claims are strong but the Court should approve the Amended Settlement nonetheless because the risks of proceeding with the litigation outweigh the benefits of the Amended Settlement. Despite observing that "the vast majority of courts . . . have certified similar FACTA classes," Plaintiff suggests there is a risk the Court might not certify a contested class (Doc. 47 at 14); that there is a "risk inherent in

proceeding to trial where Plaintiff will have the burden of proof on establishing that Defendants acted willfully;" and that Defendants could argue on appeal that a large verdict violates their due process rights (Doc. 47 at 14-18).

The Court is not persuaded by either parties' arguments. To begin, Plaintiff's explanation why the Court should approve the Amended Settlement is little more than a discussion of the risks inherent in prosecuting almost any class action. There is always a chance that a court might not certify a class, that the jury might find plaintiffs have not met their burden of proof, or that an appellate court might overturn a verdict. The question is, what is the chance that one or more of these events will happen in this case? Plaintiff's explanation is unpersuasive because it is so generic it could be used to justify a wide range of possible settlements here. The Plaintiff should place in the record an estimate of the class members' claims so that the Court can demonstrate it has a rational basis to approve the Amended Settlement, particularly since Plaintiff proposes to settle the class members' claims so early in the litigation.

Turning to Defendants' arguments, although they have described their defense in great detail, the Court is not convinced the class claims are worth so little. The fact that a defendant has identified a colorable defense does not make the plaintiff's claims weak. *Sobel*, 2011 WL 2559565, at *10. Furthermore, several of Defendants' arguments have little merit. For example, the Court rejects Defendants' claim that a class is patently "uncertifiable." While the Court is unsure if the "vast majority" of courts have certified similar cases as Plaintiff suggests, it is clear that many courts—including at least one court in this district—have. *See, e.g.*, *Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284 (W.D. Mo. 2010); *Beringer v. Standard Parking Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008); *Reynoso v. S. Cnty. Concepts*, No. SACV07-373-JVS, 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007). This suggests a class could be certified.

The Court is also skeptical of Defendants' claim that a class cannot be certified because it would lack the requisite numerosity when the parties agree, at least for settlement purposes, that Defendants may have printed FACTA noncompliant receipts for approximately 770,000 individuals. The Court is not prejudging this issue—the Court recognizes Defendants have not briefed this issue in detail, and if they had the Court might agree with their position—but a class of hundreds of thousands of people would appear to meet the threshold for numerousity.

Some of Defendants' other observations may have merit. The parties advise the collectability of a large judgment is an issue here. Defendants report they collect annual revenues of approximately $75 million and that their profits are substantially less (Doc. 45 at 48). Defendants claim—and Plaintiffs agree there is a risk—that "[a] judgment against the Defendants ranging from $130 million to $1.3 billion would instantly cause the Defendants to file for bankruptcy" (Doc. 45 at 31, 48; Doc. 47 at 11). The value of the class claims should be discounted to reflect such a risk. The question is, how much should they be discounted?

Unfortunately, the existing record does not provide any evidence or methodology by which the Court can determine the class members' potential ranges of recovery or their chances of collecting a verdict. This leaves the Court "unable to make any reasoned assessment of the value of the claims" and unable to approve the proposed settlement. *Sobel*, 2011 WL 2559565, at *10.

**B.     The Court cannot determine from the existing record the value of the Amended Settlement.**

Unlike settlements involving cash payments to class members, which are relatively easy to value, courts are increasingly skeptical of coupon based settlements because they may be of questionable value. Amended Manual for Complex Litigation (Fourth) § 21.662 (2008). Additionally, as noted above, Rule 23(e)(2) and 28 U.S.C. § 1712(e) require the court to explicitly

determine whether the value of the "coupon settlement is reasonable in relation to the value of the claims surrendered." *Sobel*, 2011 WL 2559565, at *10.

Although the parties need not provide a precise monetary value for a settlement, they should sufficiently develop the record so an approximate value can be established. *Synfuel Techs., Inc.*, 463 F.3d at 653-54. Otherwise, the Court will have no rational, independent basis for determining whether the settlement is fair, reasonable, and adequate.

To determine the value of a coupon settlement, a court must consider "the real monetary value and likely utilization rate of the coupons provided by the settlement." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1073 (C.D. Ca. 2010). The face value of a coupon cannot be used to establish its monetary value because the monetary value of a coupon is always less than its face value. *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (Easterbrook, J.); *True*, 749 F. Supp. at 1075 (observing courts have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes because compensation in kind is worth less than cash of the same nominal value). To help determine the value of a coupon settlement, CAFA provides "the court may, in its discretion upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed." 28 U.S.C. § 1712(d).

Here the record is insufficiently developed to determine the approximate value of the Amended Settlement. While there is evidence of how many coupons will be mailed out, there is no evidence concerning each coupon's monetary value or how many will be redeemed,[3] much less how many will be redeemed for $30 instead of $10. Given the number of FACTA cases that have settled, the Court suspects that reasonable estimates of this data are available. In the Court's

---

[3] In response to the Court's question, "[w]hat percentage of the coupons mailed do the parties estimate will be redeemed?" (Doc. 51 at 1), the parties stated that they "do not have an estimate" (Doc. 52 at 4).

11

experience, class action settlement administrators often possess this information or can reasonably estimate these rates.[4] Yet, the existing record provides no valuation for the coupons, nor does it contain any evidence or estimate of the likely redemption rate. This leaves the court "unable to fulfill its duty to the settlement class under Rule 23 and CAFA." *Sobel*, 2011 WL 2559565, at *10.

**Conclusion**

The Court reiterates that it appreciates the parties' efforts to settle this lawsuit. Given the existing record, however, the Court cannot find the parties have met their burden of developing the record and proving that the settlement is fair, reasonable, and adequate.

The Court herby orders a hearing on the Amended Settlement. During this hearing, the parties should place on the record evidence indicating an approximate value for the class members' claims as well as a monetary value for the Amended Settlement so the Court can determine whether the proposed coupon settlement offers reasonable value for the class members' claims.

**IT IS SO ORDERED.**

Date: July 2, 2013                                        /s/ Greg Kays
                                                          GREG KAYS, JUDGE
                                                          UNITED STATES DISTRICT COURT

---

[4] While such expert testimony would be helpful, it is not required. The Court will consider any plausible method of valuing the Amended Settlement, so long as it is reasonably accurate and reliable.