**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY**

| | | |
|---|---|---|
| JOHN T. GALLOWAY, | ) | |
| individually, and on behalf of a class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE KANSAS CITY LANDSMEN, LLC, | ) | |
| A BETTERWAY RENT-A-CAR, INC., | ) | |
| EASY CAR RENTAL COMPANY, | ) | |
| ADAMSON CAR & TRUCK RENTAL, INC., | ) | |
| A BETTERWAY LEASING, LLC, | ) | |
| THE ST. GEORGE LANDSMEN, LLC, | ) | |
| A BETTERWAY FUNDING, LLC, | ) | CIVIL ACTION NO. 4:11-cv-01020 |
| KANSAS CITY FUNDING, LLC, | ) | |
| THE KANSAS LANDSMEN, LLC, | ) | |
| MEMPHIS FUNDING, LLC, | ) | |
| WICHITA FUNDING LLC, | ) | |
| THE WICHITA LANDSMEN, LLC, | ) | |
| THE UTAH LANDSMEN, LLC, | ) | |
| MILLARD REAL ESTATE HOLDINGS, LLC, | ) | |
| EASY CAR LEASING, LLC, | ) | |
| THE MEMPHIS LANDSMEN, LLC, | ) | |
| THE SALT LAKE CITY LANDSMEN, LLC, | ) | |
| EASY CAR FUNDING, INC., | ) | |
| GELDER-WILLETT, | ) | |
| EASY CAR REALTY, AND | ) | |
| DOUGLAS COUNTY REAL ESTATE, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF RENEWED UNOPPOSED MOTION FOR
APPROVAL OF ATTORNEYS' FEES AND EXPENSES AND CLASS
REPRESENTATIVE INCENTIVE FEE**

OP 968619.1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blessing v. Sirius XM Radio Inc.*,
   507 Fed.Appx. 1 (2nd Cir. 2012)..................................................................13, 14

*Childs v. Unified Life Ins. Co.*,
   No. 10–CV–23–PJC, 2011 WL 6016486 (N.D. Okla. 2011) .......................................10

*Fish v. St. Cloud State Univ.*,
   295 F.3d 849 (8th Cir. 2002) ...........................................................................9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................................11

*Nienaber v. Citibank (South Dakota) N.A.*,
   No. 04-4054, 2007 WL 2003761 (D.S.D. 2007) ...................................................7

*Perez v. Asurion Corp.*,
   No. 06–20734, 2007 WL 2591180 (S.D.Fla. Aug. 8, 2007)........................................14

*Radosti v. Envision EMI, LLC*,
   760 F.Supp.2d 73 (D.D.C.2011)........................................................................14

*Wheeler v. Missouri Highway & Transp. Com'n*,
   348 F.3d 744 (8th Cir. 2003) ...........................................................................9

STATUTES

15 U.S.C.A. § 1681o ............................................................................................15

28 U.S.C. §1712(b) .........................................................................................7, 13

CAFA .........................................................................................................13, 14

*CAFA's Clear Language, Legislative History, and Interpretive Case Law* ........................12

Class Action Fairness Act, 28 U.S.C. § 1712 ............................................................12

OTHER AUTHORITIES

http://www.usatoday.com/story/tech/2014/09/24/data-breach-companies-
   60/16106197/ .........................................................................................8, 9

Rule 16 ............................................................................................................5

Rule 26 ............................................................................................................5

S. Rep. No. 109–14 at 30 (2005) ...........................................................................14

i

# TABLE OF CONTENTS

**Page Nos.**

TABLE OF AUTHORITIES ....................................................................................... i

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     BACKGROUND ............................................................................................. 3

III.    THE SETTLEMENT AND FINAL APPROVAL ........................................... 3

IV.     REPORT OF CLAIMS ADMINISTRATOR ................................................. 4

V.      DETAILED ACCOUNTING OF FEES AND COSTS .................................... 4

VI.     LEGAL  ANALYSIS ....................................................................................... 6

        A.      Plaintiff's Success  in this Action Entitles  Class Counsel to  the
                Requested Fee ...................................................................................... 7

        B.      A Lodestar Analysis Confirms That  the Fee Requested is Reasonable ............. 9

                1.      The Risk Associated with Contingent Fee Cases ......................... 9

                2.      Hourly Rates ............................................................................. 10

                3.      Hours Expended ....................................................................... 10

                4.      Costs ........................................................................................ 11

                5.      Lodestar Summary ................................................................... 11

        C.      CAFA's Clear Language, Legislative History, and Interpretive Case Law
                Confirms that a Lodestar Analysis is the Appropriate Measure for the
                Reasonableness of the Fee Award in Cases Such as the Present One. ................. 12

V.      CONCLUSION ............................................................................................. 15

OP 968619.1

<u>**INTRODUCTION**</u>

Plaintiff John T. Galloway ("Plaintiff") hereby respectfully requests an Order from this Court approving his renewed request for attorneys' fees and costs and class representative incentive fee in the above-captioned action. Plaintiff successfully settled this lawsuit on a class-wide basis that included both equitable relief forcing Defendants to comply with FACTA's common-sense truncation requirement in all of their retail operations, and creating an appreciable discount opportunity for the 726,210 class members who were given direct notice of such opportunity. Plaintiff requests an award of attorneys' fees and reimbursable expenses in the amount of $153,416.76. Following negotiations with respect to an amended settlement agreement that provided more relief to the Class per the request of the Court, Plaintiff and Defendants agreed to reduce the agreed attorney fee and expense request from $200,000.00 to $175,000.00. After additional scrutiny of the invoices by undersigned counsel, Plaintiff's counsel has further reduced its attorneys' fees to $147,717.75. In addition, Plaintiff is requesting $5,699.01 in advanced expenses. This request is consistent with the necessary and demonstrable work performed herein to achieve the successful result in settling this class action lawsuit. Therefore, in total, Plaintiff requests an award of attorneys' fees and reimbursable expenses in the amount of $153,416.76. In support of his Renewed Unopposed Motion for Approval of Attorneys' Fees and Expenses and Class Representative Incentive Fee, Plaintiff states as follows:

I. **PRELIMINARY STATEMENT**

On December 16, 2013, Plaintiff filed an Unopposed Motion for Approval of Attorneys' Fees and Expenses and Class Representative Incentive Fee ("Unopposed Motion") (Doc. 69) and Memorandum in Support thereof (hereinafter "Memorandum") (Doc. 70). In his Memorandum, Plaintiff demonstrated that the Parties' Settlement Agreement showed that this litigation on behalf of a consumer class was successful. The Memorandum detailed that the proposed

OP 968619.1

Settlement provided Settlement Class Members with a Certificate for $10.00 applicable to any rental, or $30.00 applicable to a rental exceeding $150.00 (excluding any fees or taxes), for each transaction the Settlement Class Member engaged in with Defendants during the Class Period for which they were provided an electronically printed receipt that included the credit or debit card's expiration date and/or more than the last five digits of the credit or debit card number. The Memorandum also explained that the Certificates were transferable, could be used in conjunction with other coupons or discounts, and were valid for 6 months following the Effective Date of the Settlement.

Plaintiff also advised the Court that according to information provided by Defendants in this Action, there were approximately 1,184,357 transactions conducted by Settlement Class Members for which they have received Certificates. Therefore, Plaintiff informed that the maximum benefit available to Settlement Class Members as a result of this Settlement is $35,530,710.00 (if all Certificates were distributed successfully and were redeemed at the $30.00 level).

In the Memorandum, Plaintiff also demonstrated that Plaintiff has also succeeded because, as a result of this litigation, Defendants are now truncating credit and debit card receipts in compliance with FACTA at each of their currently owned businesses. Indeed, Budget has stipulated to the Court that all of its retail stores are now fully in compliance with the FACTA truncation requirements. (*See* Stipulation and Settlement Agreement, Doc. 45, page 62 of 112). Finally, Plaintiff posited that additional value was created through Defendants' agreement to fund all costs of notice and claims administration, and that these benefits entitle Plaintiff's Counsel to an award of fees and costs and Plaintiff's incentive fee payment.

The total amount that Plaintiff requested for attorneys' fees and reimbursable expenses was $175,000.00. (Doc. 70 at 4.) This was the negotiated cap on attorneys' fees agreed to by Plaintiff's counsel and Defendants; said amounts negotiated after the terms of the class settlement were finalized between the parties. Plaintiff asserted in its briefing that the amount sought would be reasonable under either the "loadstar" or "percentage of the benefit" approaches, but Plaintiff's Motion was based on the lodestar method. (*Id.* at 4-5.)

On August 21, 2014, the Court issued an Order denying the Unopposed Motion without prejudice. (Doc. 90.) In that Order, the Court ordered Plaintiff to refile an amended application at least thirty days after the deadline to redeem the certificates expired and attach the following as exhibits:

1.  a detailed accounting of each attorney's or staff member's hours, along with their hourly rate and a brief explanation of what they spent that time doing, so that the Court can perform an accurate lodestar analysis;

2.  a listing of each individual expense for which counsel seeks reimbursement, not just the aggregate amount of expenses in the case; and

3.  a report from the claims administrator stating:

    i.   how many certificates were mailed;
    ii.  how many of the certificates were returned as undeliverable; and
    iii. how many of the certificates were redeemed at the $10 level and at the $30 level.

(Doc. 90.) The deadline to redeem the certificates expired on August 28, 2014.

## II.   **BACKGROUND**

In the interest of judicial economy and efficiency, Plaintiff incorporates herein by reference its Background set forth in its Memorandum. (Doc. 70 at 2-3.)

## III.  **THE SETTLEMENT AND FINAL APPROVAL**

The essential terms of the Settlement are set forth in the Settlement Agreement, which was finally approved by the Court on February 28, 2014. (Doc. 89.) In particular, as set forth in

OP 968619.1

the Plaintiff's Memorandum, Defendants agreed to provide each Settlement Class Member with a Certificate good for $10.00 or $30.00 toward any rental, depending on the value of the rental, the specifics of which was set forth in the Memorandum. (Doc. 70 at 3.) Notice of the Settlement was provided to the Settlement Class Members, which provided for a time-line for requests for exclusion and objections to the Settlement. (Doc. 70 at 4.)

As set forth in the Court's February 28, 2014 Order, the Court found that the parties placed evidence in the record demonstrating that the Settlement provided reasonable value for the class members' claims and was fair, reasonable and adequate. *(Id.)* Thus, the Court approved the settlement.

## IV. REPORT OF CLAIMS ADMINISTRATOR

As ordered by the Court, attached hereto as Exhibit A is the report of L. Stephen Tilghman, the President of Tilghman & Co. P.C. Per the Court's August 21 Order, Mr. Tilghman has presented a report as to redemptions in this matter as follows:

Certificates Mailed – 726,210

Certificates Returned as Undeliverable – 5,712

Certificates Redeemed at the $10.00 level – 89

Certificates Redeemed at the $30.00 level – 237.

## V. DETAILED ACCOUNTING OF FEES AND COSTS

As ordered by the Court, attached hereto as Exhibit B, is the Declaration of Joshua C. Dickinson attaching a detailed invoice for all time and costs incurred in successfully prosecuting this matter to judgment.

Plaintiff's counsel has submitted a detailed accounting of all time incurred for this matter. Plaintiff's staffing typically included two partners, one associate and one paralegal working on the file, with each preforming the work appropriate to their level of experience and abilities.

4

OP 968619.1

Staffing at this level is standard for complex class action matters and consistent with staffing in other markets. During the life of the matter, one associate (Lindsey Perkins) left the firm and was replaced by an Of Counsel lawyer (Kyle Russell), who also subsequently left the firm. Further, one Partner, (Brian Christensen), left the firm and was replaced by another Partner, (Josh Dickinson). Plaintiff reviewed the bill in detail and has reduced time and "no charged" for time incurred by paralegals and staff. Therefore, there is no time that is excessive, redundant or otherwise unnecessary. All time submitted was reasonably necessary to achieve the successful outcome for the Plaintiff and the Class.

As set forth in the attached Declaration of Joshua C. Dickinson (Exhibit B), major tasks in this matter were:

1. Preparation of Complaint, Filing, and Service

2. Work on Response to Defendants' Arguments against Class Certification, Statute of Limitations and Definition Issues

3. Work on Plaintiff's Demand

4. Work on Defendants' Settlement Position and Arguments against Class Definition, Mootness and Damages Analysis

5. Discovery Preparation and Service

6. Defendants' Discovery

7. Rule 26 Conference, Rule 16 Report, Proposed Scheduling and Disclosures

8. Work with Defendants Regarding Discovery for Mediation

9. Mediation Statement Preparation and Strategy for Settlement Demand

10. Mediation

11. Prepare Settlement Agreement

5

OP 968619.1

12.     Amended Complaint and Addition of Defendants

13.     Prepare Motion and Suggestions in Support of Class Certification, Settlement Agreement, Notice, Claim Form and Exhibits

14.     Work and Negotiate with Budget Counsel on Multiple Rounds of Edits to Suggestions in Support of Class Certification, Settlement Agreement, Notice, Claim Form, and Exhibits

15.     Status Reports to Court

16.     Negotiate with Defendants Following Court Denial of Motion for Approval of Settlement

17.     Negotiate and Prepare Joint Revised Scheduling Proposal

18.     Work on Revised Settlement Agreement and Supporting Documents

19.     Work with Expert Regarding Notice and Redemption Testimony for Court

20.     Prepare for and Conduct Preliminary Approval Hearing with Court

21.     Work on Supplemental Briefing in Support of Revised Settlement Agreement

22.     Website Notice and Response to Class Members

23.     Work with Defendants and Court Regarding Notice Deficiency

24.     Motion for Final Approval

The attached Exhibit B details each attorney or staff member's hours, their hourly rates and provides a summary of each time entry for the Court's lodestar analysis. Further, the attached Exhibit B identifies each individual expense for which counsel seeks reimbursement.

## VI.     LEGAL ANALYSIS

Plaintiff requests an award of attorneys' fees and reimbursable expenses in the amount of $153,416.76. Plaintiff's success in this FACTA action entitles class counsel to the requested attorneys' fees and costs, as well as the Class Representative to an incentive fee in the stipulated

OP 968619.1

amount of $3,000.00. In accordance with the Court's Order (Doc. 90), Plaintiff now provides the Court with the additional argument and analysis in support of its Renewed Motion.

### A. Plaintiff's Success in this Action Entitles Class Counsel to the Requested Fee

Plaintiff requests an award of attorneys' fees and reimbursable expenses in the amount of $153,416.76. In consumer cases such as this, two main approaches are utilized by courts to analyze a request for attorney fees. "Under the 'lodestar' approach, the hours expended by counsel are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount, and this amount may be adjusted up or down to reflect the individualized characteristics of a particular action." *Nienaber v. Citibank (South Dakota) N.A.*, No. 04-4054, 2007 WL 2003761, *2 (D.S.D. 2007) (citing *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259-60 (8th Cir. 1991)). "The second method, the 'percentage of the benefit' approach, permits an award of attorney fees that is equal to some fraction of the common fund that counsel were successful in gathering during the course of the litigation in issue." *Id.* (citing *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Walitalo v. Iacocca*, 968 F.2d 741, 747-48 (8th Cir. 1992)). Although Plaintiff's request would be reasonable under either approach, Plaintiff's motion in this case is based solely on a traditional lodestar approach, pursuant to 28 U.S.C. §1712(b), and within the parties' negotiated cap.

Plaintiff was successful in making substantial value available to the Settlement Class. Specifically, as a result of this litigation, Defendants are now in compliance with FACTA at each of their business locations. Prior to the filing of this lawsuit, Defendants were in open violation of a fundamental fraud protection statute by including more private consumer information on its retail credit card receipts than was/is permissible under federal law. As advanced in the pleadings and elsewhere in this matter, the stated purpose of Congress in passing

7

the "truncation requirement" was to prevent identity theft from criminals who seek to steal someone's identity through use of information on credit card receipts. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing billions of dollars per year. As such, ensuring compliance with this longstanding federal statute provided a benefit to Defendants' hundreds of thousands of customers by reducing the risk that they will be the subject to identity fraud in the future.

Data security, credit card theft, and identity theft are not new, but they are a burgeoning problem. As recent data breaches at popular retailers such as Target, Home Depot, and JP Morgan Chase have demonstrated, consumers' data security is increasingly under attack. A recent report suggested that 43% of all companies have experienced some form of data breach in the past year. http://www.usatoday.com/story/tech/2014/09/24/data-breach-companies-60/16106197/. Congress sought to address this troubling issue over a decade ago by passing FACTA and attempting to clog at least one method of identity theft – stolen information from a credit card sales receipt. Under FACTA, the burdens on businesses were featherweight, the benefits to the consumers were obvious, and non-compliance with the Act (at this late date) is unacceptable. By the success achieved in this lawsuit, Plaintiff and his counsel have ensured that Defendants will protect their customers from the type of data theft risk meant to be stamped out by FACTA.

Additionally, Plaintiff created a total maximum monetary value for the Settlement Class Members of approximately $35,530,710.00 in the form of Certificates as described above. Admittedly, the actual redemption was considerably lower than expected by all parties. A variety of factors may have played into this, including as the Court stated in its Order approving the final settlement, "an imperfectly carried out notice process." (Doc. 90.) But, with assistance

8

OP 968619.1

from the Court, the parties negotiated a process that allowed relatively easy redemption of the coupon, direct notice to each impacted customer, and a long redemption period hopefully providing an opportunity for such use by class members. The tangible benefits to each class member were accessible, appreciable, and reasonable under the circumstances. The parties and the Court believed that such process was "fair, reasonable, adequate and in the best interests of the class." *Id*. Those findings by the Court are not undermined in anyway by the ultimate redemption usage.

Moreover, had Plaintiff not accepted this settlement and instead proceeded to trial, there existed a material risk that Class Members would have recovered less, or perhaps nothing at all. Indeed, the risk to the class was two-fold. First, Defendants advanced several colorable defenses that, if accepted by the Court, could have resulted in no class benefits at all. Second, given the size of the class and available statutory damages, a judgment on the merits may have driven Defendants into bankruptcy protection, again divesting class members of any opportunity for relief. Thus, the decision to obtain the class relief scrutinized and approved by the Court was a wise decision and created the most reasonable value proposition for the class under the circumstances of this case. As such, Plaintiff's attorneys' fees and advanced expense request of $153,416.76 should be approved.

### B.      *A Lodestar Analysis Confirms That the Fee Requested is Reasonable*

#### 1.      The Risk Associated with Contingent Fee Cases

The starting point in determining attorney fees by the lodestar method is to multiply the number of hours reasonably expended by the reasonable hourly rates. *Wheeler v. Missouri Highway & Transp. Com'n*, 348 F.3d 744 (8th Cir. 2003); *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). However, class counsel's willingness to prosecute this matter on a risk-based contingent basis allows the

Court to also consider the ultimate equitable and monetary results class counsel achieved. *See Childs v. Unified Life Ins. Co.*, No. 10–CV–23–PJC, 2011 WL 6016486, *15 n.10 (N.D. Okla. 2011) (citing *In re Harrah's Entm't*, No. CIV. A. 95–3925, 1998 WL 832574, at *5 (E.D. La. 1998) ("To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.")).

### 2. Hourly Rates

Class Counsel's hourly rates in this matter for attorneys have ranged from $205.00 to $350.00, and hourly rates for non-attorney staff have been at $160.00. As set forth in the Dickinson Declaration, such rates are reasonable in this market for experienced, complex class action representation. Indeed, this case required significant class action experience to navigate the numerous issues presented, and to consummate the settlement of a process that included tens of thousands of plaintiffs.

Through the date of this motion, based on these hourly rates and the number of hours expended on this matter, Class Counsel's requested lodestar attorney fee is $147,717.75. Finally, Class Counsel has incurred expenses in the amount of $5,699.01 thus far in this matter. Class Counsel's hourly rates are well within the range of what is reasonable and appropriate in this region for experienced complex class action work. Class Counsel's hourly rates are the same as their regular current rates charged for their services in their standard non-class, non-contingent matters. Thus, Counsel's rates do not reflect the increased risk factor of this action.

### 3. Hours Expended

Undersigned counsel reviewed all billed time to this matter before this submission to the Court. After voluntary reductions of approximately 60 hours, Class Counsel and their non-attorney staff have spent approximately 518 hours working on this matter at the hourly rates set

10

OP 968619.1

forth above. There is no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. at 433. All the time submitted was reasonably necessary to achieve the successful outcome for the Plaintiff and the Class. Although a number of different billing attorneys appear in the detailed invoices attached hereto, this is a reflection of the fact that several attorneys working on this case left employment with the underlying law firm during the course of the lawsuit, and were replaced on the file by other counsel. The work performed by these various counsel were not redundant, and typically the file was maintained by two partners, an associate, and one paralegal, with each performing the work appropriate to their level of experience and abilities. This is a common staffing model for complex class action cases in this and other regions. *See* Dickinson Declaration, Exhibit B.

    4.   <u>Costs</u>

Class Counsel has incurred $5,699.01 in expenses to date in the prosecution of this matter. Among other things, these costs include filing fees, copying charges, charges for computerized legal research, hiring an expert to testify regarding redemption rates, and mediator charges. All of the costs were advanced by Counsel and were necessarily incurred. Plaintiff should be awarded the unreimbursed costs in full.

    5.   <u>Lodestar Summary</u>

As set forth in the Dickinson Declaration attached hereto, the total lodestar calculation herein is $147,717.75. This amount is <u>lower</u> than the agreed amount of attorneys' fees and costs negotiated with Defendants due to the reduction of fees by Plaintiff's counsel.

OP 968619.1

**C.** **CAFA's Clear Language, Legislative History, and Interpretive Case Law Confirms that a Lodestar Analysis is the Appropriate Measure for the Reasonableness of the Fee Award in Cases Such as the Present One.**

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712 offers specific guidance to courts examining fee applications in the context of settlements involving discounted goods or services (coupons) as the primary means of compensating the class for the wrongdoing of the Defendants.

Section 1712, in pertinent part, states:

(a) Contingent fees in coupon settlements.—If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

(b) Other attorney's fee awards in coupon settlements.—

(1) In general.—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

(2) Court approval.—Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with multiplier method of determining attorney's fees.[1]

Thus, subsection 1712(a) makes it clear that it is inappropriate to base a fee award in a coupon settlement case on the unredeemed value of the coupons. It says that if the settlement, as in this case, provides for a recovery of coupons, the portion of any fee award attributable to the coupon award "shall be based on the value to class members of the coupons that are redeemed."

---

[1] Subsection 1712(c), in cases involving both coupon and other relief, allows both methods of fee calculation to be used. The statute thus creates the option of calculating an attorney's fee award in a mixed relief case via the lodestar method, as a purely contingent fee, or as a combination of the two. However, and although Plaintiff's counsel achieved the equitable remedy of statutory compliance by Defendants, Plaintiff does not elect mixed method analysis.

OP 968619.1

However, subsection 1712(b) expressly provides that petitioning counsel can elect to have their attorneys' fees awarded on the basis of a lodestar analysis. In such case, the redemption rate is not germane to the Court's analysis, and instead the Court simply reviews the reasonableness of time spent litigating the case and the rates requested.

Indeed, Section 1712(b) contains three clauses. The first makes it clear that subsection 1712(b) applies when the class settlement "provides for a recovery of coupons to class members." That is the case here. The second clause permits a fee award to be based on something other than the value of the coupons: "a portion of the recovery of the coupons is not used to determine the attorney's fee." Again, that is the request in this case. The third clause authorizes use of the lodestar method when clauses one and two apply: the fee award "shall be based upon the amount of time class counsel reasonably expended working on the action." (emphasis added).

Courts in numerous jurisdictions have supported this common sense interpretation of CAFA. Those courts have held that a lodestar is an appropriate methodology for compensating class counsel if counsel elects an award on that basis. Specifically, the court in *Blessing v. Sirius XM Radio Inc*., 507 Fed.Appx. 1 (2nd Cir. 2012) examined the issue of valuation of class relief in relation to the appropriate means of compensating class counsel, and held:

> Objectors also argue that the price freeze offered in the proposed settlement was the equivalent of a "coupon" and, therefore, should have been subject to the attorneys' fee provisions applicable to coupon settlements under the Class Action Fairness Act of 2005 ("CAFA"). See § 1712(a)-(c). We need not, however, decide this issue. Even assuming that the coupon provisions of CAFA were applicable, the district court's approval of the proposed settlement and the attorneys' fee award was appropriate. As noted, the attorneys' fees were negotiated only after the terms of the settlement were reached, and the fee award comes directly from Sirius XM, rather than from funds (or coupons) earmarked for the class.

> Thus, even assuming the price freeze was the equivalent of a coupon, no "portion of [the] attorney's fee award ... is attributable to the award of the coupons." § 1712(a). Where "a portion of the recovery of the coupons is not used to determine

13

the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." § 1712(b)(1); see also S.Rep. No. 109–14, at 30 (2005), 2005 U.S.C.C.A.N. 3 ("[T]he proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action.").

*Id.* at 4-5; *see also Radosti v. Envision EMI, LLC*, 760 F.Supp.2d 73, 77–78 (D.D.C.2011) ("The statute explicitly contemplates application of the lodestar method with a multiplier, but it does not explicitly require that approach."); *Perez v. Asurion Corp.*, No. 06–20734, 2007 WL 2591180, at *2 (S.D.Fla. Aug. 8, 2007) ("CAFA gives the Court the discretion to award fees using the lodestar method.").

CAFA's legislative history further confirms this approach. The 2005 Senate Report states, in relevant part:

> ... Section 1712(a) states that in class action settlements in which it is proposed that an attorney fee award be based solely on the purported value of the coupons awarded to class members, the fee award should be based on the demonstrated value of coupons actually redeemed by the class members....

> In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that class counsel fees be based upon the amount of time class counsel reasonably expended working on the action. Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief. As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method of calculating attorney's fees.

S. Rep. No. 109–14 at 30 (2005) (emphasis added).

Here, Plaintiff believes that the Court can and should award attorneys' fees based upon the reasonable attorneys' fees and costs agreed to by the Defendants, which were separately negotiated and paid out of funds separate from the class relief afforded herein. Such amount is confirmed reasonable under a CAFA analysis by resort to a lodestar review. The extensive work

14

performed herein to research, file, prosecute, discover, mediate, negotiate, settle, and finalize the class process were reasonable and necessary under the circumstances, and the ultimate value to the class in the form of opportunity for discounted services and ensuring Defendants' future compliance with this Federal statute justify the fee requested. This Court has already scrutinized the ultimate settlement reached in this matter, and found "the Settlement is fair, reasonable, adequate and in the best interests of the class." (Doc. 90, page 2.) Counsel respectfully submits that it should be fairly compensated for the attorney time and advanced costs it spent obtaining these results, up to and including the total amount of $153,416.76, plus an incentive fee award to Plaintiff of $3,000.00.

## V.    CONCLUSION

Under all the circumstances existing here, Plaintiff's request for fees and costs is reasonable. The Settlement Agreement represents a good outcome for Plaintiff's claims. First, the Defendants are now in compliance with FACTA at all of their business locations. Additionally, by agreeing to the settlement, Plaintiff assured that each Settlement Class Member would receive a transferable, stackable Certificate valid for 6 months for either $10.00 or $30.00 toward a future rental from Defendants. Even assuming that Plaintiff would prevail in a trial on his claims, such a result could certainly yield less against Defendants, or perhaps no recovery at all.[2] For the foregoing reasons, Plaintiff John Galloway requests that he be awarded reasonable attorneys' fees and costs in the amount of $153,416.76, plus an incentive fee award to Plaintiff of $3,000.00, and that the Court order the Defendants to pay such amounts to Plaintiff's counsel within ten (10) days of the issuance of the Court's order, and grant such other relief as proper.

---

[2] A showing of negligent conduct only entitles a plaintiff to actual damages and attorneys' fees. 15 U.S.C.A. § 1681o. Plaintiff has not pled a cause of action for actual damages, thus any finding of negligent (as opposed to willful) conduct on the part of the Defendants would result in no benefit to the Class.

OP 968619.1

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

/s/ Joshua C. Dickinson
Joshua C. Dickinson          MO# 51446
Bryant T. Lamer              MO # 57355
1000 Walnut Street, Suite 1400
Kansas City, MO
64106-2140
T: (816) 474-8100
F: (816) 474-3216
jdickinson@spencerfane.com
blamer@spencerfane.com

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of November, 2014, I electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to all counsel of record.

/s/ Joshua C. Dickinson
*Attorney for Plaintiff*

16